**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

JERRY F. POPHAM, JR.,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.

CIVIL ACTION NO.: 2:14-cv-157

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge John G. Farrell ("the ALJ" or "ALJ Farrell") denying his claim for period of disability, disability insurance benefits, and supplemental security income benefits. Plaintiff urges the Court to reverse the ALJ's decision and award him benefits. Defendant asserts the Commissioner's decision should be affirmed. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision.

### **BACKGROUND**

Plaintiff protectively filed an application for period of disability and disability insurance benefits on January 29, 2012, and an application for supplemental security income benefits on February 4, 2012, alleging that he became disabled on August 8, 2009, due to back problems, constant pain, diabetes, depression, sleep apnea, and bipolar disorder. (Doc. 9-3, p. 3; Doc. 12, p. 2.) After his claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On April 22, 2013, ALJ Farrell conducted a hearing at which Plaintiff, who was represented by a counsel, appeared and testified. Dennis Conroy, a vocational expert, also appeared at the hearing. ALJ Farrell found that Plaintiff was not disabled within the

meaning of the Act. (Doc. 9-2, p. 27.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Doc. 9-2, p. 2.)

Plaintiff, born on March 25, 1959, was fifty-four (54) years old when ALJ Farrell issued his final decision. He has a high school education. (Doc. 12, p. 2.) Plaintiff's past relevant work experience includes employment in several positions at a pulp mill. (Doc. 9-2, pp. 51–54.)

## DISCUSSION

### I. The ALJ's Findings

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520 & 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) & 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment

2

precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform his past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of August 8, 2009, through the date of ALJ Farrell's decision on July 3, 2013. (Doc. 9-2, p. 29.) At Step Two, the ALJ determined that Plaintiff had multilevel spondylosis, degenerative disc disease, bipolar disorder, major depression, and diabetic neuropathy, conditions considered "severe" under the Regulations. However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Id. at p. 30.) The ALJ found that Plaintiff had the residual functional capacity, through the date of his decision, to perform a full range of work at the light exertional level, except for the following limitations: only occasionally performing posturals; avoiding concentrated exposure to vibration, hazardous machinery, and unprotected heights; jobs involving simple instructions, routine

repetitive tasks, simple work-related decisions, and no fast-paced production work[1]; infrequent workplace changes should be gradually introduced; and some occasional supervision to set realistic goals . (Id. at p. 31.)  At the next step, ALJ Farrell noted Plaintiff was unable to perform his past relevant work.  (Id. at p. 34.)  The ALJ found at the fifth and final step that Plaintiff could perform the jobs of stock checker, shipping weigher; and order caller, all of which are light, unskilled jobs which exist in significant numbers in the national economy.  (Id. at p. 35.)

## II.     Issue Presented

Plaintiff contends the ALJ and Appeals Council erred by failing to consider the mental residual functioning capacity assessment prepared by Plaintiff's treating physician.[2]  (Doc. 11, p. 1.)

## III.    Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

---

[1] It appears the ALJ erred in his findings that Plaintiff could engage in fast paced work, as he asked the vocational expert specifically about a no fast paced production work in the posed hypothetical. (Doc. 9-2, p. 83.)

[2] In his Statement of the Issues, Plaintiff expresses concern with the ALJ's credibility finding and labels the ALJ's residual functioning capacity finding as "horsefeathers." (Doc. 11, p. 1.) Plaintiff does not treat the residual functioning capacity and credibility issues separately in his Brief, and the Court will discuss the ALJ's credibility findings to the extent those findings are relevant to the ALJ's mental residual functioning capacity determination.

4

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## IV. Whether Substantial Evidence Supports the ALJ's Mental Residual Functioning Capacity Finding

### A. Dr. Cooper's Mental Residual Functioning Capacity Questionnaire

Plaintiff contends that, had his treating psychiatrist's mental residual functioning capacity form of August 8, 2013, been evaluated under the "new and material evidence" provision of the Act, he would have been found disabled, or the Appeals Council would have remanded to the ALJ with instructions. (Doc. 11, p. 2.) Plaintiff asserts that the ALJ did not consider his treating psychiatrist's mental residual functioning capacity because, if he had, the ALJ's assessment of Plaintiff's credibility would have been different. (Id. at p. 5.) Plaintiff maintains it is "ridiculous" that the ALJ gave greater weight to the opinion of a consultative psychologist than he did to the opinion of Plaintiff's treating physician.

Defendant states the mental residual functioning capacity form was submitted to the Appeals Council after ALJ Farrell issued his opinion, so any assertion that the ALJ should have considered this form should be rejected. (Doc. 12, p. 6.) In addition, Defendant asserts that the ALJ assigned great weight to the opinions of State agency medical consultants and significant weight to the opinion of the consultative mental health examiner. (Id. at pp. 6–7.) Defendant

5

states that the Appeals Council properly determined that the evidence which post-dated the ALJ's decision would not have changed that decision. Defendant asserts that the evidence relating to Plaintiff's mental residual functioning capacity is not relevant to the period the ALJ considered, as the issue in this case is whether substantial evidence supports ALJ Farrell's determination that Plaintiff was not under a disability through July 3, 2013. (Id. at p. 9.)

Additionally, Defendant contends that, even if this evidence relates back to the relevant period because Dr. Cooper opined that Plaintiff's limitations were lifelong, Dr. Cooper's mental residual functioning capacity assessment still would not have changed the ALJ's decision. Specifically, Defendant maintains that Dr. Cooper's findings are not supported by other evidence of record, including the treatment notes from Gateway Behavioral Services, where Dr. Cooper practices, and the vocational evidence. Defendant notes that, despite Dr. Cooper's opinion that Plaintiff's limitations were lifelong, Plaintiff was able to work for twenty-nine (29) years for the same employer. (Id. at p. 10.)

If new and material evidence[3] is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge's hearing decision. The Appeals Council shall evaluate the entire record, including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. 20 C.F.R. § 404.970(b). "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the

---

[3] 42 U.S.C. § 405(g) "permits courts to remand a case to the Social Security Administration for consideration of newly discovered evidence." Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998). To obtain a remand under that provision, "the claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level." Hunter v. Soc. Sec. Admin., Comm'r, 808 F.3d 818, 821 (11th Cir. 2015), *certiorari petition filed*, No. 15-1150 (Mar. 16, 2016) (citing Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986)). .

administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" Ingram, 496 F.3d at 1261 (quoting 20 C.F.R. § 404.970(b)).

Here, Dr. Douglas Cooper filled out the Mental Residual Functioning Capacity Questionnaire on August 8, 2013, which post-dates ALJ Farrell's decision of July 3, 2013. (Doc. 13, p. 3.) While Plaintiff had received treatment at Gateway prior to the ALJ's denial of his claim, Dr. Cooper did not treat or examine Plaintiff until after this denial. (Doc. 9-11, p. 25; Doc. 9-13, pp. 45–55, 81.) Additionally, the mental residual functioning capacity form Dr. Cooper filled out is dated more than a month after ALJ Farrell denied Plaintiff's claims. The Appeals Council had no duty to accept or review this form. This enumeration of error is without merit. However, to the extent the Appeals Council had accepted this form as evidence, there is nothing before the Court indicating that the contents of this form would have changed the ALJ's determination.

ALJ Farrell noted Plaintiff was admitted to St. Simons by the Sea in September 2009 on an inpatient basis for depression and generalized anxiety. (Doc. 9-2, p. 33.) The ALJ also noted that Dr. Eddy Vincent treated Plaintiff for bipolar disorder from June 2010 to October 2012, during which time Plaintiff complained of manic behavior, problems concentrating, and lack of focus. However, the ALJ observed Dr. Vincent noted Plaintiff's symptoms were controlled by medication.[4] (Id.)

ALJ Farrell reviewed Plaintiff's treatment records from Gateway Behavioral Services, dated February 2012 through January 2013, for depression and bipolar disorder. (Id.) According to these notes, Plaintiff reported having mood swings, racing thoughts, and depression. ALJ

---

[4] Dr. Cooper observed that Plaintiff refused to comply with his medications. (Doc. 9-12, p. 21; Doc. 9-13, p. 9.)

Farrell stated that these treatment notes also indicated that Plaintiff was active in his church prison ministry and enjoyed going bowling with his grandson.

Additionally, the ALJ noted the evaluation of May 2012 by Dr. Greg Cox's who noted Plaintiff was goal-oriented and logical, was able to perform simple math, and had good eye contact. (Id.) Dr. Cox noted Plaintiff's history of moderate depression and some mania, and that his concentration was unaffected, his pace was slowed, and he could perform simple, repetitive tasks.

ALJ Farrell found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible.[5] Specifically, ALJ Farrell observed the objective medical evidence did not establish conditions to produce "the serious symptoms and limitations" Plaintiff alleged during the hearing. (Id.) ALJ Farrell stated that Plaintiff's clinical exams were "largely within normal limits." (Id.) The ALJ stated he assigned "great weight" to the State agency physicians, particularly in light of there being no evidence that Plaintiff's conditions are "not remediable by treatment or therapy." (Id. at p. 34.) Further, the ALJ assigned "[s]ignificant weight" to Dr. Cox's opinion, as he reviewed the evidence of record and performed his own evaluation. (Id.) The ALJ observed that, while Plaintiff described limited activities of daily living, there was no persuasive evidence that his impairments "substantially preclude" him from doing these activities of daily living. (Id.) As an example, ALJ Farrell noted that, although Plaintiff testified that he had problems interacting with people, at other times, he testified that he gets along well with others and has no problem being around people. (Id. at p. 32.)

---

[5] As Plaintiff has not alleged as an enumeration of error anything regarding the ALJ's findings as to Plaintiff's physical limitations, the Court need not recount the ALJ's findings as to those limitations.

ALJ Farrell's determination that Plaintiff had the mental residual functioning capacity to engage in work at the light exertional level, with some limitations, is supported by substantial evidence. In making this determination, the ALJ looked to the objective medical evidence of record, as well as Plaintiff's reports of daily activities of living. While ALJ Farrell did not have the benefit of Dr. Cooper's questionnaire, there is nothing before the Court indicating this questionnaire would have changed the ALJ's determination because this questionnaire does not raise issues that the ALJ did not already consider, and it is not consistent with evidence and reports ALJ Farrell found to be credible. Substantial evidence supports the ALJ's findings as to Plaintiff's mental residual functioning capacity, and Plaintiff's contentions to the contrary are without merit.

### B. Whether Plaintiff Meets Listing 12.04

ALJ Farrell specifically discussed whether Plaintiff met or medically equaled the criteria for Listing 12.04. (Id. at p. 30.) "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Arrington v. Soc. Sec. Admin., 358 F. App'x 89, 93 (11th Cir. 2009) (citing Sullivan v. Zebley, 493 U.S. 521, 530 (1990)). To prevail at step three, the claimant must provide specific evidence—such as medical signs, symptoms, or laboratory-test results—showing that her impairment meets or medically equals a listed impairment. Sullivan, 493 U.S. at 530. A claimant whose severe impairment satisfies or medically equals a listed impairment is "conclusively presumed to be disabled based on his or her medical condition." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). If a claimant cannot prove that he is disabled at step three, he may do so at steps four and five. See Phillips v. Barnhart, 357 F.3d 1232, 1238–40 (11th Cir. 2004).

The ALJ's finding as to whether a claimant does or does not meet a listed impairment need not be explicit and may be implied from the record. Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986) (holding that the ALJ implicitly found that the claimant did not meet a Listing because it was clear from the record that the ALJ had considered the relevant law and evidence). Furthermore, although the ALJ must consider the Listings in making his disability determination, he is not required to recite mechanically the evidence leading to his ultimate determination. Bellew v. Acting Comm'r of Soc. Sec., 605 F. App'x 917, 920 (11th Cir. 2015) (internal citation omitted).

Listing 12.04 addresses affective disorders and provides that such disorders are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. 404, Subpart P, Appendix 1, § 12.04. To meet Listing 12.04, a claimant must have "[m]edically documented persistence, either continuous or intermittent, of" depressive syndrome, manic syndrome, or bipolar syndrome and this condition results in at least two of the following: marked restrictions in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.[6] Id. at §§ 12.04A, B. In the alternative to the "B" criteria, a claimant may, in addition to the "A" criteria, show a: "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support,

---

[6] "The term 'marked' means more than moderate but less than extreme and covers a limitation that interferes 'seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." Simms v. Colvin, No. CV 114-212, 2015 WL 6509128, at *4 (S.D. Ga. Oct. 28, 2015) (internal citation omitted), *report and recommendation adopted* (S.D. Ga. Nov. 19, 2015).

and one of the following:" repeated episodes of decompensation, each of extended duration; or a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement ("C" criteria). Id. at § 12.04C.

ALJ Farrell determined Plaintiff had mild restriction in activities of daily living. In making this determination, the ALJ observed that Plaintiff's function report revealed he watches television daily, washes clothes, and prepares small meals, and Plaintiff reported he bowls with his grandson. (Doc. 9-2, p. 30.) In the areas of social functioning and concentration, persistence, or pace, ALJ Farrell found Plaintiff had moderate difficulties. The ALJ noted Plaintiff attends church, visits the sick, and works in the prison ministry and with others, yet Plaintiff has panic attacks and limits the people he is around. However, the ALJ also noted Plaintiff's bipolar disorder limits his abilities to concentrate and pay attention for long periods. (Id.) Finally, ALJ Farrell found Plaintiff had no episodes of decompensation of extended duration.

Because the ALJ determined Plaintiff's mental impairment did not cause at least two marked limitations (or one marked limitation with repeated episodes of decompensation of extended duration), the "paragraph B" criteria were not met. ALJ Farrell also found the "paragraph C" criteria were not met. In so doing, the ALJ stated Plaintiff did not have a medically documented history of chronic organic mental disorder of at least two years' duration which caused more than a minimal limitation on his ability to perform basis work. (Id. at p. 31.) ALJ Farrell also determined Plaintiff's "symptoms or signs [were] currently attenuated by medication or psychosocial support[.]" (Id.)

ALJ Farrell specifically considered whether Plaintiff met Listing 12.04 by consideration of the criteria for both the "B" and "C" paragraphs. As noted above, ALJ Farrell's determination that Plaintiff met neither of these sets of criteria is based on substantial evidence. Plaintiff failed to meet his burden of establishing he met all of the criteria of Listing 12.04, and any contention to the contrary is without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **CLOSE** this case.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made

only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 24th day of May, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA